MALCOLM A. HEINICKE (State Bar No. 194174)
TYLER A. ROOZEN (State Bar No. 248669)
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, California 94105-2907
Tel: (415) 512-4000; Facsimile: (415) 512-4077
Email: Malcolm.Heinicke@mto.com

Attorneys for Defendants
SHEA MORTGAGE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAMARA PARTRIDGE individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>SHEA MORTGAGE INC.,<br><br>Defendant. | CASE NO. C 07-04230 BZ<br><br>**DEFENDANT SHEA MORTGAGE INC.'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Hearing held on July 23, 2008<br><br>**The Honorable Bernard Zimmerman** |

## I. INTRODUCTION AND SUMMARY OF ISSUES

On July 23, 2008, the Court held a hearing on the parties' Joint Motion for Preliminary Approval of a Class Action Settlement. At the hearing, counsel for the parties addressed numerous issues raised by the Court. Without ruling on the pending motion, the Court requested that the parties, within two court days, provide supplemental legal authority addressing two issues. Specifically, the Court requested authority regarding the following:

(1) Is it appropriate to approve a settlement that, pursuant to Federal Rule of Civil Procedure 23, binds class members (who do not opt out) with respect to state law claims if the complaint also asserts a claim under the federal Fair Labor Standards Act ("FLSA"), which, pursuant to 29 U.S.C. § 216(b), requires that individuals affirmatively opt in to an action to assert an FLSA claim? In other words, can the Court approve a settlement that resolves both Rule 23 (opt out) state law claims and an FLSA (opt in) claim?

(2) Is it appropriate to approve a settlement in which a class member would be subject to the judgment (on state law claims) even if his or her individual notice is returned to the claims administrator as undeliverable? In other words, can a judgment bind an absent class member who is sent, but does not actually receive a notice?

Counsel for the parties have met and conferred, and they have agreed to address these issues through separate pleadings. Specifically, through a separate pleading, Plaintiff will address the first issue set forth above in greater detail, and Defendant will address the second issue in detail below.

For the reasons set forth below, Defendant respectfully submits that the proposed settlement is entitled to preliminary approval and thus reiterates its request that the Court (a) authorize the parties to provide notice to the class; and (b) schedule a final approval hearing to be conducted following the completion of the notice process.

## II. ARGUMENT

### A. Issue #1 -- The Effect of the FLSA's Opt In Provisions

Defendant respectfully submits that the interaction of the FLSA's opt in provisions and Rule 23's opt out provisions do not preclude approval of the settlement here because the settlement will not result in the release of FLSA claims by class members who do not file claims

forms. Instead, only those class members who submit timely claim forms, and affirmatively participate in the settlement, will release their direct FLSA claims. It is Defendant's understanding that Plaintiff will address this issue in greater detail in its supplemental pleading.

### B. Issue #2 -- The Effect of the Judgment on a Class Member Who Does Not Receive the Notice

The Court also requested additional authority supporting the validity of the Settlement's class action release provisions for state law claims, and in particular, the application of that release to a class member whose notice is returned to the claims administrator even after address verification measures are taken.

Pursuant to the Settlement, each class member will be mailed an individualized notice via first class mail through the United States Postal Service. *See* Stipulation Re: Settlement of Class Action ("Stip.") at ¶ 2.4.1. The notice will be sent to the Last Known Address of the class members as reflected in Defendant's employment records. Prior to mailing the Class Notice, the Claims Administrator will undertake an Updated Address Verification[1] measure and send the Class Notice to the updated address, if any. *Id*. In the event that subsequent to the first mailing of a Class Notice, and prior to the Notice Response Deadline, any notice is returned as undeliverable, i.e., the envelope is marked return to sender, the Claims Administrator will again take an address verification measure and send the notice to any updated address that is provided. *See id*. ¶ 2.4.6. In the event that these address verification measures produce no new address, the Notice shall be sent again to the Last Known Address. *Id*. Pursuant to Section 2.5 *et seq*. of the Settlement, any class member who does not opt out by the Notice Response Deadline shall be deemed to have waived his or her right to do so, and so he or she will be subject to the judgment and its associated release of state law claims (but not the FLSA claim).

The Court expressed concern that, in the event that a notice is returned to the Claims Administrator as undeliverable, and the time to opt out has expired, an individual who did not receive the notice would be subject to the judgment in the same manner as someone who

---

[1] The Settlement defines the phrase "Updated Address Verification Measure" as checking "of the address against the National Change of Address Database maintained by the United States Postal Service to determine an updated address, if any." Stip. at ¶ 1.43.

1  received the notice but elected not to respond or someone who was mailed the notice but later
2  claimed he or she never received it.  While such scenarios are of course factually different,
3  relevant precedent makes clear that the effective result can be the same, and thus the release
4  provisions at issue can be approved, if (as is the case here) the overall notice procedure is
5  sufficient.
6          Federal Rule of Civil Procedure 23(c)(2) states that "For any class certified under
7  Rule 23(b)(3), the court must direct to the members of the class the best notice practicable under
8  the circumstances, including individual notice to all members who can be identified through
9  reasonable efforts."  Such notices serve due process interests by providing class members with
10 "the opportunity to be excluded from the class action and not be bound by any subsequent
11 judgment."  *Peters v. National R.R. Passenger Corp.*, 966 F.2d 1483, 1486 (D.C. Cir. 1992).
12 Courts have also recognized that class action notice procedures are crucial to protect the
13 defendant's due process rights, which include "a defendant's settled expectation in the finality of
14 litigation."  *Id.* at 1487.  These finality expectations are protected in part by commonplace
15 requirements that opt out elections and settlement claim submissions be received within a
16 specified time period.  *See generally* Newberg on Class Actions § 11.37 (4th ed. 2002) ("[j]ust as
17 timely filing of proofs of claim are required for participation in a class settlement fund, so too
18 class members must make a timely request to be excluded from the class") (discussing numerous
19 cases).[2]
20         With respect to the instant issue, it is critically important to note what Rule 23 and
21 due process concerns do not require -- neither the best practicable standard nor due process
22 concerns require courts to ensure "actual notice."  *See generally Silber v. Mabon*, 18 F.3d 1449,
23 1454 (9th Cir. 1994) (holding that a class member was bound by a class action settlement even

---

[2] Along these lines, the Ninth Circuit has specifically held that a class member claim submission "cutoff date is essential" to such interests. *In re Gypsum Antitrust Cases*, 565 F.2d 1123, 1127 (9th Cir. 1977).  And, other courts have held that "[p]utative class members are not deprived of due process when their claim forms are found unacceptable for untimeliness." *Grace v. City of Detroit*, 145 F.R.D. 413, 416 (E.D. Mich. 1992).  Thus, so long as the "best practicable" notice standard is satisfied, it is entirely proper, and indeed commonplace, to include both an opt out and claim submission deadline.  *See* Newburg, *supra* (discussing decisions in which settlements "contained the usual provision allowing class members to exclude themselves" along with "a bar date for the filing of claims").

5618737.1         3         DEF'S SUPPLEMENT BRIEFING RE: PRELIM. APPROVAL; CASE NO C 07-04230 BZ

1  though he did not receive the notice in question and rejecting the contention that "best
2  practicable" equated to an "actually received" standard); *Peters*, 966 F.2d at 1486 ("the due
3  process clause does not amount to a guarantee of notice to a class member").

4  Instead, "the proper inquiry is . . . whether the method of providing the notices was
5  reasonably calculated, under all the circumstances, to inform him of the pendency of the class
6  action and his right to be excluded from it." *Id*. (*citing and quoting Mullane v. Central Hanover*
7  *Bank & Trust Co*., 339 U.S. 306, 314-15 (1950)).  In other words, when analyzing class action
8  notice procedures, federal courts focus on the overall adequacy of the notice process proposed,
9  and not on the specific results of the notice process for each class member at issue.  As a result, if
10 the overall process is adequate, then all class members can be bound by the associated judgment.

11 It is well-established that "individualized notice by mail to the last known address
12 [i]s the 'best notice practicable' in a class action contest." *Grunin v. Int'l House of Pancakes*, 513
13 F.2d 114, 121 (8th Cir. 1975) (citing and quoting *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156,
14 174-77 (1974)); *Peters*, 966 F.2d at 1486 ("[i]t is beyond dispute that notice by first class mail
15 ordinarily satisfies rule 23(c)(2)'s requirement that class members receive 'the best notice
16 practicable under the circumstances'").

17 Based on the authorities above, it is clear that the notice procedures proposed are
18 entirely sufficient.  The stipulated procedures require that individualized notices be sent to each
19 class member at the most recent address contained in his or her employment records.  In other
20 words, the initial address list to be used will be one that is sound and very likely to have valid
21 addresses.  In addition, prior to the mailing, each address will be checked against the National
22 Change of Address database; furthermore, a returned notice will be forwarded to any forwarding
23 address provided, and if none is provided, another address verification measure will be taken.  In
24 other words, the proposed notice process is designed to maximize the chances that the notice will
25 be actually received.  *See, e.g., In re Wireless Tel. Federal Cost Recovery Fees Litig.*, No. MDL
26 1559 4:03-MD-015, 2004 WL 3671053, * 9 (W.D. Mo. April 20, 2004) ("use of the National
27 Change of Address database shows the means and methods used by the parties to get this notice
28 to the settlement class members.  Furthermore, mail forwarding was also used to ensure the notice

1  was properly received by those effected by the Agreement and return-mail services and mail-
2  forwarding were used for any mail that was undeliverable as addressed").

3  Defendant recognizes that the Court's inquiry here is not limited to determining
4  whether there is an "actual notice" requirement. Specifically, the Court's comments at the
5  hearing revealed that the Court is seeking input on the nuanced issue of whether there is
6  distinction between (a) a class member whose notice is returned and thus clearly not received,
7  even after all address verification measures have been taken; and (b) a class member who later
8  claims or demonstrates that his or her notices was not received, even though it was never returned
9  to the claims administrator. While Defendant appreciates the factual difference between these
10 two situations, it respectfully submits that the legal result is the same in both situations. The
11 pertinent analysis dictates that so long as the overall notice process is acceptable, the fact that an
12 individual class member does not receive his or her notice does not nullify the effect of the
13 judgment, no matter when his or her lack of actual receipt is discovered.

14 In *Silber*, for example, it was undisputed that the class member in question did not
15 timely receive the notice that was mailed to him. *See Silber*, 18 F.3d at 1452. Nevertheless, the
16 court ruled that the class member was still bound by the judgment because the overall notice
17 process was sufficient:

18 > We therefore conclude that the appropriate question remains … "what notice is
19 > reasonably certain to inform the absent members of the plaintiff class," … and the
> appropriate standard is the "best notice practicable" under *Eisen* and *Mullane*.
20 > While Argyris [the class member in question] was fortuitously unable to exercise
> his right to opt out in a timely fashion, that fact alone does not mean that the best
21 > practicable notice under the circumstances was not given to absent class members.

22 *Id*. *See also Peters*, 966 F.3d at 1486-87 (explaining that if "Peters [the class member] had failed
23 to receive the notices because the post office lost them, he would have no argument that he was
24 denied due process" because the notice process used by the parties was "reasonably calculated to
25 notify him of the class action").

26 In fact, courts have rejected challenges to notice procedures even when the notice
27 at issue was not received because of sloppiness or inattention to detail in the underlying notice

28

1  process itself.  For example, in *Peters*, the D.C. Circuit rejected a claim that a notice was
2  inadequate even though the address used did not include an apartment number and contained an
3  incorrect zip code.  *Peters*, 966 F.2d at 1486-87.  Likewise, in *Gross v. Barnett Banks, Inc.*, 934
4  F. Supp. 1340 (M.D. Fla. 1995), a court rejected a challenge to the parties' notice procedures
5  despite the fact that "independent verification of [plaintiff's] address would have uncovered the
6  mistake." *Id*. at 1345.

7  Along these lines, while counsel for Defendant understands and appreciates the
8  Court's duty to evaluate the instant settlement on its own independent merits, to the extent it is
9  helpful, counsel respectfully submits that they have obtained state and federal court approval for
10 numerous class action settlements containing the very provisions at issue here.  *See* Declaration of
11 Malcolm Heinicke, submitted concurrently herewith.

## III.    CONCLUSION

For these reasons, Defendant respectfully submits that it is proper to approve the provisions of the settlement that would bind an absent class member in the (very unlikely) event that all address verification measures failed and the notice itself was not actually received. Defendant and its counsel hope that the above authorities have addressed the Court's concerns, and Defendant respectfully reiterates its request that the Court grant preliminary approval for the settlement.

DATED: July 25, 2008                           MUNGER, TOLLES & OLSON LLP


                                               By:     /s/ Tyler A. Roozen
                                                       TYLER A. ROOZEN

                                               Attorneys for Defendant
                                               Shea Mortgage Inc.