1  SCOTT EDWARD COLE (State Bar No. 160744)
   MATTHEW R. BAINER (State Bar No. 220972)
2  KEVIN R. ALLEN (State Bar No. 237994)
   SCOTT COLE & ASSOCIATES, APC
3  1970 Broadway, Ninth Floor
   Oakland, CA 94612
4  Telephone:    (510) 891-9800
   Facsimile:    (510) 891-7030
5  E-mail:       scole@scalaw.com

6  Attorneys for Plaintiff TAMARA PARTRIDGE

7  MALCOLM A. HEINICKE (State Bar No. 194174)
   TREVOR D. DRYER (State Bar No. 247826)
8  MUNGER, TOLLES & OLSON LLP
   560 Mission Street, 27th Floor
9  San Francisco, California 94105-2907
   Tel: (415) 512-4000; Facsimile: (415) 512-4077
10 Email: Malcolm.Heinicke@mto.com

11 Attorneys for Defendant SHEA MORTGAGE INC.

12

13                 UNITED STATES DISTRICT COURT

14               NORTHERN DISTRICT OF CALIFORNIA

15

16 TAMARA PARTRIDGE individually, and        CASE NO.  C07-04230 BZ
   on behalf of all others similarly situated,
17                                           **NOTICE OF JOINT MOTION AND JOINT**
                 Plaintiffs,                 **MOTION FOR FINAL APPROVAL OF**
18                                           **CLASS ACTION SETTLEMENT**
        vs.                                  **AGREEMENT; MEMORANDUM OF**
19                                           **POINTS AND AUTHORITIES IN**
   SHEA MORTGAGE INC.,                       **SUPPORT THEREOF**
20
                 Defendant.                  **PROPOSED JUDGMENT AND ORDER OF**
21                                           **FINAL APPROVAL LODGED**
                                             **CONCURRENTLY**
22
                                             **[STIPULATION RE:  SETTLEMENT;**
23                                           **DECLARATION OF MEDIATOR**
                                             **ALREADY ON FILE]**
24
                                             DATE:     December 17, 2008
25                                           TIME:     10:00 a.m.
                                             CTRM:     G
26
                                             **The Honorable Bernard Zimmerman**
27

28

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................ 1

I.      INTRODUCTION AND SUMMARY OF PROPOSED SETTLEMENT ........................ 1

II.     PROCEDURAL BACKGROUND ........................................................................ 3

    A.      Summary of Actions and Claims in Dispute ............................................ 3

    B.      Preliminary Approval ................................................................................ 5

III.    THE SETTLEMENT .......................................................................................... 5

IV.     THE NOTICE PROCESS ..................................................................................... 9

    A.      Summary of the Notice Process ................................................................ 9

    B.      Reaction of the Class .............................................................................. 10

V.      ARGUMENT ................................................................................................... 11

    A.      The Court Granted Preliminary Approval After Extensive Initial Inquiry ........... 11

    B.      All Of The Pertinent Factors (And Most Notably The Reaction Of The Class) Counsel In Favor Of Final Approval ......................................... 12

        1.      Strength Of The Case ................................................................ 13

        2.      Size Of The Claims And Amount Offered To Settle Them ...................... 13

        3.      The Rise, Expense, Complexity and Likely Duration of Further Litigation ............................................................................. 13

        4.      The Stage of the Proceedings .................................................... 14

        5.      Class Representation ................................................................. 15

        6.      The Reaction Of The Class To The Proposed Settlement ...................... 16

VI.     CONCLUSION ................................................................................................ 17

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Cody v. Hillard*,
    88 F. Supp. 2d 1049 (D.S.D. 2000).................................................................... 16

*Franklin v. Kaypro Corp.*,
    884 F.2d 1222 (9th Cir. 1989), cert. denied, *Franklin v. Peat Marwick Main & Co.*,
    498 U.S. 890 (1990) ............................................................................................ 11

*Girsh v. Jepson*,
    521 F.2d 153 (1975) ............................................................................................ 14

*Grant v. Bethlehem Steel Corp.*,
    823 F.2d 20 (2d Cir. 1987).................................................................................. 16

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998)............................................................................ 11

*In re Am. Bank Note Holographics, Inc.*,
    127 F. Supp. 2d 418 (S.D.N.Y. 2001)............................................................ 2, 16

*In re Art Materials Antitrust Litig.*,
    100 F.R.D. 367 (N.D. Ohio 1983) ...................................................................... 16

*In re Dun & Bradstreet Credit Servs. Customer Litig.*,
    130 F.R.D. 366 (S.D. Ohio 1990) ....................................................................... 16

*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*,
    MDL Docket No. 901, 1992 U.S. Dist. Lexis 14337........................................... 15

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995), aff'd 134 F.3d 133 (3d Cir. 1998)........................... 13

*In re Tableware Antitrust Litig.*,
    484 F. Supp. 2d 1078 (N.D. Cal. 2007) .............................................................. 12

*In re Warner Comm'ns Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y 1985), aff'd 798 F.2d 35 (2d Cir. 1986)................... 15

*In Re Wells Fargo Home Mortgage Overtime Pay Litigation*,
    No. MDL 06-1770 MHP, 2007 WL 3045995 (N.D. Cal. Oct. 18 2007).................. 4

*Jarrard v. Se. Shipbldg. Corp.*,
    163 F.2d 960 (5th Cir. 1947)............................................................................... 11

*Lynn's Food Stores, Inc. v. United States*,
    679 F.2d 1350 (11th Cir. 1982)........................................................................... 11

*Mandujano v. Basic Vegetable Prods., Inc.*,
    541 F.2d 832 (9th Cir. 1976)........................................................................... 2, 16

*Nat'l Rural Telcoms Coop. v. Direct TV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ........................................................................ 15

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982)............................................................. 2, 11, 12, 14

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993)................................................................................. 12

*Van Bronkhors v. Safeco Corp.*,
    529 F.2d 943 (1976)............................................................................................ 14

1

## TABLE OF AUTHORITIES
### (continued)

2

**Page**

3

*Young v. Katz,*

4
   447 F.2d 431 (5th Cir. 1971)......................................................................... 14

5

## FEDERAL STATUTES

6

7
28 U.S.C. § 1715(d) ........................................................................................ 9

29 U.S.C. § 201 ........................................................................................... 1, 3

8

9

## STATE STATUTES

10

Business & Professions Code § 17200 .......................................................... 7

11
Labor Code §§ 203, 226, 512 & 1194, 2698 *et seq.* . ................................ 7, 8

Labor Code § 218, 221,1174, 2802 *set seq.* ................................................ 7

12
Labor Code § 2802.................................................................................... 1, 4, 7

13

14

## FEDERAL RULES

15
Fed. Rule Civ. Proc., Rule 23 .......................................................... 5, 11, 12, 13

16

## OTHER AUTHORITIES

17

Class Action Fairness Act of 2005................................................................. 9

18
Conte & Newberg, 4 Newberg On Class Actions § 11.41........................... 14

19
Manual for Complex Litigation Third (1995) § 30.41 ................................. 12

Schwarzer, *et al.*, *Cal. Practice Guide: Federal Civil Procedure Before Trial*
20
   (rev. #1 2008)............................................................................................ 13

21

22

23

24

25

26

27

28

TO THE COURT AND INTERESTED PARTIES:

PLEASE TAKE NOTICE THAT on December 17, 2008 at 10 a.m., or as soon thereafter as counsel may be heard in Courtroom G of this Court, The Honorable Bernard Zimmerman Presiding, Plaintiff Tamara Partridge and Defendant Shea Mortgage Inc. will and hereby do jointly and respectfully move the Court for (1) an order determining the good faith of and granting final approval for the proposed settlement; and (2) the entry of the proposed judgment.  In conjunction with this motion, the parties have lodged additional copies of the proposed order and judgment that they seek to have entered.  These documents were exhibits to the settlement agreement executed and submitted in the preliminary approval process.

This Motion is based upon this Notice of Motion, the Motion, the Memorandum of Points and Authorities submitted herewith, the previously filed declarations, the accompanying declaration of the Claims Administrator, the Stipulation of Settlement previously filed, the other papers on file in this action, and such other materials or arguments that the Court may receive at or before the hearing on this Motion.  (Class Counsel will separately file pleading(s) in support of the requested attorney fee award.)

Respectfully submitted,


DATED:  November  10, 2008:          SCOTT COLE AND ASSOCIATES, APC


By:____/s/ Kevin R. Allen_____
          KEVIN R. ALLEN

Class Counsel and Counsel to Plaintiff Tamara Partridge

DATED:  November  10, 2008:          MUNGER, TOLLES & OLSON LLP


By:____/s/ Malcolm A. Heinicke_____
          MALCOLM A. HEINICKE

Counsel for Defendant Shea Mortgage Inc.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION AND SUMMARY OF PROPOSED SETTLEMENT

Plaintiff Tamara Partridge (herein "Class Representative") and Defendant Shea Mortgage Inc. (herein "Shea Mortgage") jointly and respectfully request that this Court (1) grant final approval for the proposed class action settlement (which is already on file with the Court); and (2) enter the proposed judgment.

Through the instant action, Class Representative alleges, on behalf of herself and a putative class of others allegedly similarly situated to her, that Shea Mortgage violated certain state and federal employment laws, including without limitation the California Labor Code, the California Industrial Welfare Commission Wage Orders, and the federal Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA"), by purportedly, *inter alia*, (a) improperly classifying its California Loan Counselors as "exempt" employees, i.e., employees who are exempt under California and/or federal law from premium overtime requirements, meal and rest period requirements, and other wage and hour requirements; and (b) improperly failing to reimburse its California Loan Counselors for necessary business expenses in violation of California Labor Code § 2802.

Shea Mortgage denies the Class Representative's allegations and maintains that, at all times, it properly classified its Loan Counselors under both federal and state law, properly reimbursed or otherwise provided the employees in question with any and all necessary business expenses as required under California Labor Code § 2802, and otherwise complied with pertinent wage and hour laws.

Following the exchange of significant amounts of information pertaining to the putative Class and the issues presented (which included initial disclosures, policy documents, compensation data, declarations from putative class members, and deposition testimony), the parties engaged in settlement discussions with a well-respected and experienced mediator who specializes in California wage and hour actions such as this.  This mediation resulted in the settlement currently pending before the Court.  The settlement was reached through arms-length

1   negotiations by counsel who are experienced in and specialize in wages and hour cases. This

2   settlement, if approved, will result in the dismissal with prejudice of the above captioned matter.

3          When a district court evaluates the settlement of a class action for final approval,

4   the "universally applied standard is whether the settlement is fundamentally fair, adequate and

5   reasonable." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

6   Although there are several criteria that district courts can consider when making this fairness

7   inquiry, the Ninth Circuit and other federal courts have recognized that the number or percentage

8   of class members who object to or opt out of the settlement is a factor of great significance. *See*

9   *Mandujano v. Basic Vegetable Prods., Inc.*, 541 F.2d 832, 837 (9th Cir. 1976); *see also In re Am.*

10  *Bank Note Holographics*, *Inc.*, 127 F. Supp. 2d 418, 425 (S.D.N.Y. 2001) ("[i]t is well settled that

11  the reaction of the class to the settlement is perhaps the most significant factor to be weighed in

12  considering its adequacy") (internal quotation marks and citation omitted).

13         In this matter, in response to the notices, not one Class Member submitted an

14  objection and only three Class Members have opted out of the action. **In other words, there has**

15  **not been a single objection, and the opt out rate is less than five percent.** As this reaction and

16  the other pertinent factors make clear, the proposed settlement is fair and reasonable, and final

17  approval is appropriate. Approval of this settlement will bring a close to this litigation and allow

18  the claimants to receive significant individual payments without the delay, uncertainty and risk of

19  further litigation.

20         In making this request, the parties respectfully note that at the preliminary

21  approval stage, the Court scrutinized the terms of the settlement and ordered additional briefing

22  on specific points. And, as part of this review, the Court directed the parties to make certain

23  changes to the notice process, which they implemented. Put differently, the Court has already

24  subjected this settlement to detailed review, the parties fully followed the Court-approved notice

25  process, and the reaction of the class confirms the validity of the instant settlement and supports

26  final approval.

27

28

For the foregoing reasons, the parties respectfully request that the Court (a) enter the proposed order granting final approval for the settlement; and (b) enter the proposed judgment.

## II. PROCEDURAL BACKGROUND

### A. Summary of Actions and Claims in Dispute

Shea Mortgage is a lending institution that provides financing options to home buyers.  On August 17, 2007, Plaintiff Sherry R. Carr brought this putative class action challenging the manner in which Shea Mortgage compensated its Loan Counselors.  Specifically, Carr alleged that that Shea Mortgage violated certain state and federal employment laws, including without limitation the California Labor Code, the California Industrial Welfare Commission Wage Orders and the federal Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA"), by purportedly, *inter alia*, misclassifying its Loan Counselors as "exempt" employees, i.e., employees who are exempt under federal and/or California law from premium overtime requirements, meal and rest period requirements, and the other wage and hour requirements.

Following initial litigation and discovery, including the deposition of Plaintiff Carr, the parties attended a private mediation before David Rotman, Esq, which took place on March 5, 2008.  Mr. Rotman is an experienced mediator who specializes in the mediation of employment actions, and California wage and hour class actions in particular.  *See* Declaration of David Rotman ("Rotman Decl.") ¶¶ 1-2 (already on file from preliminary approval process, *see* Docket No. 34).  In anticipation of mediation, the parties exchanged significant amounts of information beyond that already exchanged in the discovery process, including declarations from members of the putative class, documents regarding the policies and procedures in dispute, and data pertinent to the putative class.

Also prior to this mediation, Class Counsel communicated extensively with current class representative Tamara Partridge (then merely a putative class member).  *See* Declaration of Carrie Lin ("Lin Decl.") ¶¶ 7-8 (already on file from preliminary approval process, *see* Docket No. 35).  Ms. Partridge provided Class Counsel with a declaration and relevant documents in preparation for mediation, and helped identify additional causes of action and theories of recovery

for the class, some of which were discussed and negotiated during mediation.  For example, Ms. Partridge assisted counsel in the identification of an additional cause of action for un-reimbursed business expenses, and the alleged requirement that putative class members remain "on call" throughout the day.  *Id.*

The mediation, which took an entire day, resulted in an agreement on the basic terms of the stipulated settlement now before the Court for preliminary approval.  This agreement was the result of arms-length negotiations involving experienced counsel.  *See id.* at ¶¶ 3-6. Indeed, without waiving the mediation privilege, the parties note that in reaching the stipulated settlement, they devoted significant amounts of time discussing several areas of dispute, including, without limitation:  (1) the likely outcome of the Ninth Circuit's review of *In Re Wells Fargo Home Mortgage Overtime Pay Litigation*, No. MDL 06-1770 MHP, 2007 WL 3045995 (N.D. Cal. Oct. 18 2007) (review granted), and the potential effect such a decision would have on Plaintiff's chances of achieving class certification; (2) the scope and application of various exemptions to federal and state overtime provisions; (3) whether putative class members were entitled to overtime payment for hours during which they were allegedly "on-call"; and (4) whether putative class members were entitled to reimbursement of certain expenses.

Pursuant to a stipulation between the parties and an order of this Court, a First Amended Complaint was subsequently filed, which substituted Tamara Partridge for Sherry Carr as the named plaintiff and putative Class Representative.[1]  In addition, the amended complaint focused the class definition on Loan Counselors who had been employed in California during the relevant time period and added a new claim for alleged failure to reimburse necessary business expenses or losses incurred in performance of their job duties in violation of California Labor Code § 2802.

Shea Mortgage denied and continues to deny all of the allegations summarized above, and through this settlement it does not admit (and instead expressly denies) any wrongdoing or liability.

---

[1] Sherry Carr has now opted out of this action; notably, however, she has not objected to the settlement.

B.   **Preliminary Approval**

On June 18, 2008, the parties filed a motion for preliminary approval, which was scheduled for a hearing on July 23, 2008.  At the hearing, counsel for the parties addressed various issues raised by the Court, including issues concerning the effect of the "opt in" procedures of the FLSA and the proposed method of notice.  After this hearing, without immediately ruling on the motion, the Court requested that the parties provide supplemental legal authority addressing two issues.  Specifically, the Court requested further briefing on the following: (1) whether the Court can approve a settlement that resolves both Rule 23 (opt out) state law claims and an FLSA (opt in) claim; and (2) whether a judgment binds an absent class member to who notice is sent, even if they do not actually receive the notice.  The parties provided this briefing, *see* Docket No. 38 - 40.

In addition to requesting this supplemental briefing, the Court also provided directions about specific changes to the settlement agreement, and the notice process in general. *See* Docket No. 41.  The parties addressed these specific issues and accommodated all of the Court's directions through a revised settlement agreement.  *See* Docket No. 42 & 43.

On August 14, 2008, after receiving these materials, the Court granted preliminary approval.  *See* Docket No. 46.  Additionally, the Court ordered the parties to (1) to make modifications to the notice procedures, including methods for electronic follow-up notices to current class members, if needed, and a longer claims period, and (2) for an interim declaration of compliance with the notice procedures to be filed by the Claims Administrator.  On October 14, 2008, the parties submitted a declaration from Claims Administrator Bernella Lenhart providing the confirmations requested by the Court and also noting that no notice packets for current employee class members were returned as undeliverable.  *See* Docket No. 47.

III.   **THE SETTLEMENT**

The proposed settlement calls for the certification of a settlement class consisting of all individuals who were employed by Shea Mortgage in the position of Loan Counselor in California at any time during the Class Period, i.e., August 17, 2003 through August 14, 2008.

*See* Stipulation Re:  Settlement of Class Action ("Stipulation") ¶¶ 1.2 & 1.5.[2]  Because this action was initially filed on August 17, 2007, and because the Class Representative's state law claims are subject to a maximum four-year statute of limitations, this Class Period is consistent with the claims asserted.  The Class consists of approximately 61 people.  *Id.* ¶ 1.2; Declaration of Bernella Lenhart ("First Lenhart Decl.") ¶ 3, Docket No. 47.

The Stipulation provides that the Maximum Settlement Amount (i.e., the maximum amount that Shea Mortgage can pay under the terms of the Stipulation) is $395,000.  The specific components of this Maximum Settlement Amount are:  (a) the maximum gross amount for payments to Participating Claimants, which is $251,500 (b) the maximum gross amount for Class Counsel's attorney fees and litigation costs, which is $118,500 (c) the maximum gross amount for claims administration costs, which is $10,000; and (d) the maximum gross amount for an enhancement payment to the Class Representative, Tamara Partridge, which is $15,000.  *See* Stipulation ¶ 1.14.

Each of the Class Members was mailed a notice in the form proposed.  *Id.* ¶ 2.4.1; First Lenhart Decl. at ¶3.  The settling parties drafted the Class Notice and the associated Claim Form in plain English so as to make the materials easy to understand and less likely to be disregarded or ignored.  As explained thoroughly in the Class Notice, Class Members who did not wish to be a part of the Settlement Class and did not wish to be subject to the Judgment could submit a written request to opt out of the Settlement Class.  Those three Class Members who submitted written opt out requests will not be subject to the Judgment and will be deemed to have never participated in this action.  *See id.* ¶ 2.5.2 & Ex. 2 § VI at 10.  As also explained in the Class Notice, Class Members had the option to submit written objections to the settlement.  *See id.* ¶ 2.5.3 & Ex. 2 §§ VI, VIII at 11-12.  Similarly, and as also explained in the Class Notice,

---

[2] Through the Stipulation, Shea Mortgage has not admitted any wrongdoing, and it has reserved its right to contest Plaintiffs' claims on all procedural and substantive grounds should the Stipulation not be approved or the proposed Judgment not become final.  Specifically, and without limitation, the Settling Parties have agreed that Shea Mortgage reserves its right to contest class or collective action certification should litigation here proceed.  Although Shea Mortgage vigorously contests the allegations made, it has chosen to resolve this dispute to address the questions raised and avoid the expense and disruption of further litigation.

Class Members had the option to retain their own counsel and participate in the case through counsel. *See id.* ¶ 2.5.1 & Ex. 2 § VI at 11.

All Class Members who did not timely request to opt out in writing will become Members of the Settlement Class and will be subject to the Judgment and its associated release, whether they became Participating Claimants or not. *See id.* ¶¶ 2.5.4, 2.7.1 & Ex. 2 § VI at 11. Upon the Effective Date of the Judgment, all Settlement Class Members will be deemed to have, and by operation of the Judgment will have, released all Released Claims as defined in the settlement agreement. This definition generally covers all known or unknown claims relating to: (a) alleged misclassification as an exempt employee, including without limitation any claims for (i) failure to pay regular or premium overtime wages, (ii) failure to comply with payroll or wage record-keeping or itemization requirements, (iii) failure to provide meal and/or rest periods and/or to pay additional sums of money in lieu thereof, (iv) failure to timely pay wages due at termination or otherwise, (v) failure to pay standby or "on-call" wages; and (vi) improper wage deductions; (b) any and all claims for the reimbursement of business expenses, including without limitation driving mileage reimbursements or home office expenses; (2) any and all associated statutory claims, including without limitation claims under the California Labor Code §§ 218, 221, 226, 226.7, 512, 1174, 1194, 2802, 2698 *et seq.* and the Fair Labor Standards Act ("FLSA") and the Portal to Portal Act,[3] and California Business & Professions Code § 17200 *et seq.*, and the California Industrial Welfare Commission Wage Orders; (c) any and all associated claims for penalties, including without limitation claims under California Labor Code §§ 203, 226, 226.7, 512 & 1194, 2698 *et seq.*; (d) any and all associated claims for interest, costs, or attorney fees; and (e) any and all claims pled in the Litigation that are not otherwise covered by parts (a) - (d). *See id.* ¶¶ 1.29 & 2.7.1.

Settlement Class Members who timely and properly submitted a qualifying claim form either by mail or on-line (through a website created and maintained by the Claims

---

[3] Although all other Released Claims are released by all Settlement Class Members, the Settling Parties agree that direct FLSA claims for unpaid overtime, as opposed to state law claims predicated on the FLSA such as claims as California Business & Professions Code § 17200 (which are Released Claims), are released with respect to Participating Claimants only.

Administrator) will become Participating Claimants and will receive their individualized Settlement Sums.  *See id.* ¶¶ 1.23 & 2.6.1.  To the extent a Settlement Class Member does not become a Participating Claimant, i.e., he or she does not submit a qualifying claim form, then any settlement funds that would have been paid to him or her had he or she done so will remain the property of Shea Mortgage and not be paid.  *See id.* ¶ 2.1.3.

As the Court knows from the preliminary approval process, the Settling Parties agreed to a "participation floor" of forty percent (40%), whereby, if fewer than forty percent of the total qualifying work weeks worked by the Class were claimed, then the difference would be distributed pro rata to the Participating Claimants.  *Id.*  Because the claims rate here far exceeded this floor, however, this provision will not come into effect here.

Because the Settlement Sum will represent a payment in settlement of claims for unpaid overtime wages, meal and rest period premiums, associated penalties and interest, and un-reimbursed business expenses, the parties have structured the agreement so that the amount of this payment will vary according to each claimant's length of the service between August 17, 2003 and August 14, 2008, the preliminary approval date.  Specifically, for each Qualifying Work Week worked during the pertinent period, a Participating Claimant will be eligible for a gross payment, which is likely to be $52.43.  *See id.* ¶¶ 1.28, 1.34, 1.5 & Ex. 2 (Proposed Notice to Class Members) § III at 5; Declaration of Bernella Lenhart in Support of Joint Motion for Final Approval of Class Action Settlement("Second Lenhart Decl.") at ¶ 9.

The Class Notice advised Class Members of the pertinent formula, and these notices were be individualized to advise each Class Member of the number of Qualifying Work Weeks that they have worked so that they could evaluate the settlement and its financial implications for them.  *See id.* Ex. 2 § III at 5; First Lenhart Decl. at ¶ 3 and Exhibit A.

With regard to attorney fees and costs, the parties have agreed that Class Counsel may request that the Court award up to $118,500, which would cover both its fees and costs.  *See id.* ¶ 2.8.1.  Shea Mortgage has agreed through a "stand-still" agreement not to oppose this award, which is subject to Court review.  *See id.*  With regard to the enhancement award, the Stipulation calls for a payment of $15,000 to the Class Representative, subject to Court approval.  *See id.*

¶¶ 2.8.2.  This payment is in compensation for (a) the Class Representative's efforts in the litigation including the burden associated with assisting counsel and bringing this action publicly and incurring what Class Representative believes to be the risk of possible retaliation; and (b) the Class Representative's execution of a general release of all claims Class Representative has against Shea Mortgage.  *Id.*[4]  These aspects of the settlement were, of course, fully disclosed in the preliminary approval process.

The Stipulation provides for a "Settlement Hearing" or a hearing to review final approval of the settlement, which will, absent re-scheduling, coincide with the hearing on this motion.  *See id.* ¶¶ 1.33., 2.3.1, 2.3.4 & 2.5.7.  The Class Notice advised Class Members of the date and time of this hearing and their chance to attend the hearing and make their views known.  *See id.* Ex. 2 § VIII; First Lenhart Decl. at ¶ 3 and Exhibit A.

Finally, the Stipulation provided that the parties will take all reasonable steps to comply with the requirements of the Class Action Fairness Act of 2005, including the notice requirements.  *See id.* ¶ 2.11.20.  Notice of the settlement has been provided to pertinent government officials under the Class Action Fairness Act of 2005.  *See* Docket No. 37.  Because this notice was provided on June 27, 2008, the pertinent government officials have had well over the ninety days' notice required by 28 U.S.C. § 1715(d), and the Settling Parties are unaware of any objection or comment from any pertinent government officials.

All of the terms of the proposed settlement are set forth in the Stipulation and amendments to the Stipulation on file with the Court.

## IV.   THE NOTICE PROCESS

### A.   Summary of the Notice Process

Consistent with the terms of the Stipulation, each of the Class Members was mailed a copy of the agreed upon, and Court authorized notice.  *Id.* ¶ 2.4.1; First Lenhart Decl. at ¶ 3.  Per the Court's preliminary approval order and the terms of the Stipulation, the parties

---

[4] In addition to her enhancement payment, the Class Representative shall also be entitled to receive the Settlement Sum which, as a Class Member, she would have otherwise been entitled to under the Settlement.

retained the professional claims administration firm of Gilardi & Co. LLC (the "Claims Administrator") to perform the notice and claims administration procedures in this matter. *See id*. ¶¶ 1.1, 2.4, *et seq*. & 2.9.2; First Lenhart Decl., ¶¶ 1-2.  The Class Notices described the Litigation, the terms of the settlement, and each Class Member's options with regard to the proposed settlement.  *See* First Lenhart Decl. at ¶ 3 and Exhibit A.  The Class Notices were sent, postage pre-paid, via first class mail to the Last Known Addresses of each Class Member.  *See* Stipulation ¶ 2.4.1; First Lenhart Decl., ¶ 3.  Prior to mailing the Class Notices, the Claims Administrator checked the Last Known Addresses against the National Change of Address Database maintained by the United States Postal Service to determine an updated address, if any. *See* Stipulation ¶ 2.4.1; First Lenhart Decl., ¶ 2.  In six of the seven instances in which a notice was initially returned to the Claims Administrator because the address of the recipient was no longer valid, i.e., the envelope was marked "Return To Sender," the Claims Administrator took further address verification measures, identified an updated address, and re-sent the notices to the corrected addresses.  Only three of these seven notices were subsequently returned.  *See* Stipulation ¶ 2.4.6; First Lenhart Decl., ¶ 6; Second Lenhart Decl., ¶ 7.  An additional notice was returned after the claims deadline, so no additional search was performed on this notice.  *See* Second Lenhart Decl., ¶ 7.  (All of the returned notices were for former employees.)

The Class Notice clearly informed the Class Members that they stood to receive "approximately $50.00" for every qualifying work week, and the notice also provided the number of qualifying work weeks worked by each Class Member on an individualized basis.  *See* First Lenhart Decl. at ¶ 3 and Exhibit A.  In other words, the notice provided each Class Member with individualized and complete information on his or her potential recovery.

### B.    Reaction of the Class

To date, 31 out of 61 Class Members have submitted valid claims forms, claiming just shy of sixty percent of the funds available to the Class.  *See* Second Lenhart Decl. at ¶ 10. And, because of the size of the claims made, Class Members have claimed nearly sixty percent of the funds made available to them under the settlement.  *See id*.  Additionally, two late claim forms were received.  *Id*.

6271673.3

- 10 -

1    Perhaps most importantly, not one Class Member has submitted an objection to the

2    settlement, and only three Class Members (or less than five percent of the Class) have submitted

3    valid opt out forms. *Id*. at ¶¶ 11-12.

4    **V.    ARGUMENT**

5    Rule 23 of the Federal Rules of Civil Procedure requires court approval for any

6    settlement of a class action.  Fed. Rule Civ. Pro., Rule 23(e).  Similarly, private settlements

7    containing waivers of FLSA claims must be approved by a court or the Department of Labor.

8    *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982); *Jarrard v. Se.*

9    *Shipbldg. Corp.*, 163 F.2d 960, 961 (5th Cir. 1947).

10   It is axiomatic that federal law strongly favors and encourages settlements,

11   especially in class actions.  *See Franklin v. Kaypro Corp.* 884 F.2d 1222, 1229 (9th Cir. 1989),

12   *cert. denied, Franklin v. Peat Marwick Main & Co.,* 498 U.S. 890 (1990) ("it hardly seems

13   necessary to point out that there is an overriding public interest in settling and quieting litigation.

14   This is particularly true in class action suits") (internal quotation and citation omitted).

15   Moreover, when reviewing a motion for approval of a class settlement, the Court should give due

16   regard to "what is otherwise a private consensual agreement negotiated between the parties," and

17   must therefore limit the inquiry "to the extent necessary to reach a reasoned judgment that the

18   agreement is not the product of fraud or overreaching by, or collusion between, the negotiating

19   parties, and that the settlement, taken as a whole, is fair, reasonable, and adequate to all

20   concerned." *Officers for Justice* at 625 (9th Cir. 1982).  If the parties request approval of a class

21   action settlement, a court generally cannot require the parties to modify or otherwise alter the

22   terms of the proposed settlement. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir.

23   1998) ("[t]he settlement must stand or fall in its entirety").

24   **A.    The Court Granted Preliminary Approval After Extensive Initial Inquiry**

25   As explained in the Manual for Complex Litigation, Court approval of class action

26   settlements is a two-step process:

27   First, counsel submit the proposed terms of the settlement and the
     court makes a preliminary fairness evaluation….If the preliminary

28   evaluation of the proposed settlement does not disclose grounds to

6271673.3                              - 11 -          Jt Motion For Final Approval of Class
                                                       Settlement; Case No. CV07-04230 (BZ)

1

2

> doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval, the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement.

3

4

5   Manual for Complex Litigation Third (1995) § 30.41; *see also In re Tableware Antitrust Litig.*,

6   484 F. Supp. 2d 1078, 1079-80 (N.D. Cal. 2007); *cf. Torrisi v. Tucson Elec. Power Co.*, 8 F.3d

7   1370, 1377 (9th Cir. 1993) (noting and implicitly approving the district court's use of a

8   preliminary approval process).

9            At the hearing on the motion for preliminary approval, counsel for the parties

10  addressed numerous issues raised by the Court.  Following the submission of additional briefing

11  on two specific issues and the modification of the settlement agreement per the direction of the

12  Court, preliminary approval was granted, and the parties have complied with the terms of that

13  order.  The notice process has been completed, and the Claims Administrator has already

14  confirmed, per the Court's preliminary approval order, that the notice process was handled

15  properly.  Put differently, the details of this settlement have already withstood significant and

16  much appreciated advance scrutiny from the Court, and so the instant motion focuses on the

17  pertinent reaction of the Class Members to the settlement.

18       **B.    All Of The Pertinent Factors (And Most Notably The Reaction Of The Class)
            Counsel In Favor Of Final Approval**

19

20           When a district court evaluates the settlement of a class action for final approval,

21  the "universally applied standard is whether the settlement is fundamentally fair, adequate and

22  reasonable."  *Officers for Justice,* 688 F.2d at 625.  Although Rule 23 provides no precise formula

23  for making this determination, the Ninth Circuit has identified several factors to be considered.

24  These factors include:  (1) the strength of the case; (2) the size of the claims and amount offered

25  to settle them; (3) the risk, expense, complexity and likely duration of further litigation; (4) the

26  stage of the proceedings, *i.e.*, whether the plaintiffs and their counsel have conducted sufficient

27  discovery to make an informed decision on settlement; (5) whether the class has been fairly and

28  adequately represented during settlement negotiations by experienced counsel; and (6) the

reaction of the class to the proposed settlement. *See id.* (noting that the relative importance of each of these factors will depend on the circumstances of the case); *see also* Schwarzer, *et al.*, *Cal. Practice Guide:  Federal Civil Procedure Before Trial* (The Rutter Group) § 10:849 (rev. #1 2008) (listing factors).

Here, all of the relevant factors weigh strongly in favor of final approval.

### 1.   <u>Strength Of The Case</u>

As set forth above, Shea Mortgage has presented potentially viable and complete factual and legal defenses for each of the claims presented.  Specifically, Shea Mortgage argued that the Loan Counselors at issue were, during the pertinent time, exempt from premium overtime and other wage and hour requirements.  Moreover, as discussed below, Class Counsel was clearly in a position to evaluate the strengths of Plaintiffs' claims, and the risks associated with challenging these defenses.

### 2.   <u>Size Of The Claims And Amount Offered To Settle Them</u>

Through the notice, the nature of the claims was explained to the relatively sophisticated class of Loan Counselors at issue here.  Similarly, the notice provided information on the formula used to calculate the Settlement Sums for Participating Claimants, and it also provided Class Members with their individual number of Qualifying Work Weeks so that they would have precise information on the value of the settlement potentially available to them.

Further, as set forth in greater detail below, the Class reaction strongly suggests that the settlement properly accounts for the strength of the claims.

### 3.   <u>The Rise, Expense, Complexity and Likely Duration of Further Litigation</u>

Further litigation of this matter would not serve the interests of the Class Members because it could require each Class Member to offer individualized evidence.  *See In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995), *aff'd* 134 F.3d 133 (3d Cir. 1998).  ("[t]he law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation").  By the same token, further litigation would result in a significant delay of eventual payments to Class

1   Members, if any.  Under the settlement agreement, however, it is anticipated that participating

2   Class Members will be mailed their significant payments within mere months of final approval.

3           Similarly, the complexity, expense, and likely duration of the litigation, had the

4   settlement not been consummated, also supports approval of the settlement.  Courts consider this

5   factor when determining whether to approve the proposed settlement.  *See Officers for Justice*,

6   688 F.2d at 625; *Girsh v. Jepson*, 521 F.2d 153, 157 (1975).  The Court must weigh the benefits

7   of the settlement against the expense and delay involved in achieving an equivalent or more

8   favorable result at trial.  *See, e.g., Young v. Katz*, 447 F.2d 431, 433-34 (5th Cir. 1971).

9           The policy that favors settlements of class actions and other complex cases applies

10  with particular force here.  Employment cases, and specifically wage and hour cases, are

11  expensive and time-consuming.  That this is a class action further amplifies the economies of

12  time, effort and expense achieved by this settlement invariably adding time and expense to the

13  litigation process via the certification process alone.  The settlement, on the other hand, provides

14  to all Class Members substantial relief promptly and efficiently.  Were the Court to deny approval

15  of the settlement and deny certification, Plaintiffs contend that most Class Members would be left

16  without a remedy as the economics of litigation of individual claims makes it unlikely that many

17  class members would undertake such expensive and time consuming litigation.  The settlement in

18  this case is therefore consistent with the "overriding public interest in settling and quieting

19  litigation" that is "particularly true in class action suits."  *See Van Bronkhorst v. Safeco* 529 F.2d

20  943, 950 (1976) (footnote omitted); *see also* 4 Newberg On Class Actions  § 11.41 (citing cases).

21                    **4.      The Stage of the Proceedings**

22          The Settlement Agreement was reached with the assistance of David Rotman,

23  Esq., a widely respected mediator who specializes in mediating wage and hour class action

24  disputes.  This resolution was reached following significant information and document exchanges

25  and investigation by experienced counsel who had litigated similar claims in the past within the

26  same industry.  As a result of these efforts, the parties had sufficient information to evaluate the

27  strengths and weaknesses of the Class claims and defenses, whether to pursue litigation or settle,

28  and the appropriate settlement value for the claims at issue.  As such, the litigation had reached a

1   stage where "the parties certainly [had] a clear view of the strengths and weaknesses of their

2   cases." *In re Warner Comm'ns Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y 1985), *aff'd* 798 F.2d

3   35 (2d Cir. 1986).  Therefore review of the stage of proceedings and discovery also favors

4   approval of the Settlement.

5             **5.       Class Representation**

6             There can be little question that Class Members have been represented by counsel

7   who are experienced in the areas of law at issue here.  As set forth more fully in documents

8   submitted with the motion for preliminary approval, Class Counsel have significant experience in

9   both the substance of wage and hour claims as well as the procedures for class and collective

10  actions.

11            Class Counsel wholly support approval of this Settlement, and respectfully submit

12  that their support should be accorded significant consideration.  "Great weight is accorded the

13  recommendation of counsel, who are most closely acquainted with the facts of the underlying

14  litigation.  This is because 'parties represented by competent counsel are better positioned than

15  courts to produce a settlement that fairly reflects each party's expected outcome in the litigation,'

16  and thus, "'the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its

17  own judgment for that of counsel.'"  *Nat'l Rural Telcoms Coop. v. Direct TV, Inc.* 221 F.R.D.

18  523, 528 (C.D. Cal. 2004) (citations omitted); *see also In re First Capital Holdings Corp. Fin.*

19  *Prods. Sec. Litig.*, MDL Docket No. 901, 1992 U.S. Dist. LEXIS 14337, at *8 (C.D. Cal. June 10,

20  1992) (finding belief of counsel that proposed settlement represented most beneficial result for

21  class compelling factor in approving settlement).

22            In addition, and as explained in the context of the motion for preliminary approval,

23  the proposed settlement was the product of arms-length (and often contentious) bargaining, and

24  the mediation was conducted before an experienced mediator.  Indeed, given the amounts

25  involved and the nature of claims, the fact that this settlement was negotiated at arms-length is

26  inescapable.

27

28

6271673.3                                    - 15 -          Jt Motion For Final Approval of Class
                                                             Settlement; Case No. CV07-04230 (BZ)

**6.**      <u>The Reaction OF The Class To The Proposed Settlement</u>

The Ninth Circuit and other federal courts have made clear that the number or percentage of class members who object to or opt out of the settlement is a factor of great significance. *See Mandujano*, 541 F.2d at 837; *see also In re Am. Bank Note Holographics,* 127 F. Supp. 2d at 425 ("[i]t is well settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy" (internal quotation marks and citation omitted)).

On one hand, numerous federal courts have held that a relatively high percentage of objectors or opt outs will not necessarily preclude approval of a class settlement. *See, e.g., Grant v. Bethlehem Steel Corp.,* 823 F.2d 20, 23 (2d Cir. 1987) (citing numerous cases in which class settlements were approved despite the fact that significant percentages, ranging from 15% to 56%, of relevant Class Members opted out of the settlement or otherwise objected).

At the same time, other courts have made clear that a relatively low percentage of objectors or opt outs is a very strong sign of fairness that factors heavily in favor of approval. *See Cody v. Hillard*, 88 F. Supp. 2d 1049, 1059-60 (D.S.D. 2000) (approving the relevant settlement in large part because only 3% of the apparent class had objected to the settlement); *In re Dun & Bradstreet Credit Servs. Customer Litig.,* 130 F.R.D. 366, 372 (S.D. Ohio 1990) (approving the relevant settlement and affording "substantial weight" to the fact that fewer than 5% of the class members elected to opt out of the settlement); *In re Art Materials Antitrust Litig.*, 100 F.R.D. 367, 372 (N.D. Ohio 1983) (approving the settlement and holding that the fact that none of the class members had objected and a small percentage opted out of the settlement was "entitled to nearly dispositive weight").

Critically, in this case, *not one* Class Member has objected to the settlement. Moreover, only three Class Members have elected to opt out.  These individuals constitute less than five percent of the Class.  This is by far the most telling factor establishing the fairness of this settlement.

In sum, all of the relevant factors demonstrate that this is a fair and reasonable settlement, and final approval is therefore appropriate.

**VI.    CONCLUSION**

For the foregoing reasons, the parties jointly and respectfully request that this Court grant final approval for the class settlement reached in this matter and enter the proposed judgment accordingly.

DATED:  November 10, 2008:              Respectfully submitted,


SCOTT COLE AND ASSOCIATES, APC


By:___*/s/ Kevin R. Allen*_____
          KEVIN R. ALLEN

Class Counsel and Counsel to Plaintiff Tamara Partridge


DATED:  November 10, 2008:              MUNGER, TOLLES & OLSON LLP


By:___*/s/ Malcolm A. Heinicke*_____
          MALCOLM A. HEINICKE

Counsel for Defendant Shea Mortgage Inc.


I, Malcolm A. Heinicke, attest that I have obtained concurrence from Kevin R. Allen in the filing of this Joint Memorandum of Points and Authorities in Support of Joint Motion for Final Approval of Class Action Settlement.   *See* N.D. Cal. General Order 45 § 10(B).